Case number 19-6180, USA v. Robert Ware. Argument not to exceed 15 minutes per side. Mr. Hawley, you may proceed for the appellant. May it please the Court, I'm Michael Hawley and I represent Robert Ware in this appeal. I'd like to reserve three minutes for rebuttal, please. You may, and you may proceed. Okay, thank you. Now this appeal is basically about the District Court's refusal to consider giving Mr. Ware a Booker variant. In 1997, Mr. Ware was convicted of crack and powder cocaine offenses, and he received a 30-year sentence under the guidelines that were then mandatory prior to Booker. Congress, of course, passed the First Step Act, which gives some crack offenders the chance to sentence reduction. And here, the District Court found that Mr. Ware is eligible for reduction, but declined to give him any reduction, even though it acknowledged that his sentence might be, quote, unduly harsh due to the effect of the mandatory guidelines. Now, this Court has issued some important decisions since the District Court ruled that it did not have the benefit of. Those are United States v. Boulding and Allen. In Boulding, this Court said that when doing a First Step Act sentence reduction, the Court must, at a minimum, do a, quote, thorough, renewed consideration of the 3553A factors, which, of course, includes the parsimony principle. And in Allen, the Court said that the perspective of that consideration is from the present. And so, as a bottom line, these cases stand for the proposition that when the First Step Court goes to decide whether to make a reduction, if it believes a Booker variance is warranted under the current conditions, then it needs to give that variance. Mr. Hawley, I mean, I must say, having had a number of these cases myself, this was the most thorough explanation I've ever seen from a District Court in denying a motion under the First Step Act. He specifically called out three 3553A factors that he thought were especially important,  and so I'm struggling to see exactly how this is procedurally unreasonable. Your Honor, the thoroughness really is one of the problems. It was a seven-page discussion of this issue. Usually they check a box. Yeah, sure, Your Honor, and that may have been fine. That may have been fine. That would not have shown that he had a misconception about his role in this situation. He spent a long time explaining his position so we would all know, which was good. He made it very clear, and it's clear in what he said and also in what he didn't say, but in terms of what he said, I mean, he said, quote, when he's describing what this case is about and why this case does not deserve relief, he says this case is, quote, about whether a 30-year sentence was unduly harsh under the circumstances. He acknowledged it might be unduly harsh. And then he says, quote, perhaps it would have been shorter, quote, if at the time of the defendant's original sentencing, Booker were in effect. And now when the court goes to decide whether he's going to act, he says, quote, if Congress wants to pass a retroactive sentencing statute with the objective, he doesn't say this, with the objective of making Booker retroactive, which is what he's talking about, he says, quote, it may do so, and this court will apply that statute. And he explains people who are not eligible for the FIRST STEP Act are not getting this, quote, second bite at the apple. And he says Mr. Ware, quote, should not get that second bite either. He says, quote, he should not get it, quote, just because he happened to be eligible under the FIRST STEP Act. So the judge is objecting to the fact that Mr. Ware is getting here to this position where he can get a sentence reduction. He says he doesn't deserve to be here. Under the FIRST STEP Act, he should not be getting this chance. What Boulding calls the thorough renewed consideration of 35 days. I don't read his opinion that way. I mean, I read him to say he's eligible and certain things will inform his exercise of discretion. But in a case where the defendant's guideline range, number one, doesn't change when we go back in time and pretend sections two and three of the Fair Sentencing Act were in effect at the time of the initial sentencing. Number one, so there's no change in his guidelines from when Judge Wiseman sentenced him. Number two, the range, he was sentenced at the very bottom of the range. I read this opinion to say, looking at these circumstances as a whole, he's not going to go down. And what he says about Booker is really a negative case that I'm not going to change my mind, given those two key facts, just because of Booker or the change in Apprendi or something. Because there are plenty of people who aren't getting that same relief. And that would create a disparity under 35-53. I think if the district court were here to answer the question, I think he really would say that he was not going to go through the regular consideration. He really said this man should not get a second bite of the apple just because he happened to have a crack conviction. So you should not get that second bite. He didn't give him the second bite. Right. No, he did say that. And in fact, I think if you, it's kind of like comparing apples and oranges, if you compare what a normal sentencing decision looks like under 35-53 and this. A normal one, even if it's brief, it'll talk about things like, oh, the crime was bad or it wasn't that bad. His record is horrible or it's not that bad. There's factors that show he might not be a recidivism problem or there's factors that show. This decision doesn't say any of those things, despite it being seven pages long. It doesn't discuss any of the normal things you would talk about when you're deciding what sentence is reasonable. Our court has been clear. It does not need to be a plenary resentencing. No, no. And this, again, was way more comprehensive than other cases where our court has affirmed when the district court literally checked a box that I consider this and I'm not doing it. I really think that the comprehensiveness is part shows part of the problem because despite writing seven pages, the judge didn't say any of the normal things you would talk about when you decide is 30 sentence too long or too short. All it spent its time doing was explaining why this type of case, not Mr. Where this type of case does not warrant relief. In fact, the judge's last sentence says this is not a case appropriate for relief. He's talking categorically about anyone who happens to sneak in here with eligibility based on a small crack offense doesn't deserve relief. The judge says if Congress were to pass a law that allowed people to get a second Booker second by the Apple with Booker, then he would do it. He's not doing it here because he doesn't think that's what Congress wants him to do. I think this court has said the opposite. It said, No, once you get to eligibility, we're not going to worry about the fact that a heroin offender or a powder cocaine offender may not be getting the second bite. You've got this. You've got the chance. You're there. This defendant is there, and the court's obligation is to consider, while looking at it from the present day, is the variance necessary, such that the sentence will not be unduly harsh. So I think it's both in what he says and what he doesn't say, because he says many times why he's not going to act, and it's a categorical abstract reason. Not reasons that have to do with Mr. Ware's case. And then what he doesn't say, he leaves out all the normal analysis that, you know, if the judge is going to bother writing seven pages, he would say something about these things. Now, and I really think, I mean, the case does turn on the court's interpretation of what the district judge means to say here. Is he tying himself, tying his hands improperly, or is he not? And it really does turn on that interpretation of the seven pages. I don't know if the court wants me to address the jurisdictional question, but I think, or the claims processing question, but I think, I mean. Jurisdictional stuff is cleared up by now. Yes, I think so. I think, you know, that's dead and gone, that whole idea that we don't review this stuff. Yes, one more point on what the judge is meaning. You know, I think Judge Cutler, you mentioned the sentence. The judge wrote, the fact the defendant's sentence was at the bottom of the still applicable guideline range tends to suggest that reduction of the defendant's sentence may not be warranted. Now, at that moment, the judge is talking about the fact that he's saying he already got a bottom of the guideline sentence. Well, if Booker, but these are under mandatory guidelines. In fact, if you look back at a pre-Booker case and say, oh, the judge gave him the bottom of the range, you think like, well, that's a reason to think that, well, maybe the judge would have gone farther because he went all the way to the bottom. It's not a prediction of what the other prior judge would have done. It's whether if we go back and do this under, you know, the Fair Sentencing Act, he warrants a reduction. And the court just said the fact that a sentence is at the bottom of the current guideline range tends to indicate that there's not a problem. It doesn't matter if Judge Wiseman, you know, would have gone lower, had he been able to. I mean, the guidelines are a strong indicator of reasonableness now and in this exercise under the First Step Act. I guess from our argument, if we're arguing for a Booker variance, we would say, well, that's a sign that the original judge would have possibly gone lower. In any event, I think the most important signs in his decision that he was not going to give him a Booker variance, even if he thought he deserved one, is that he said this sentence may be unduly harsh. He leaves it in place even though he says it may be unduly harsh. That is not, if you've gone through the 3553A factors and applied the parsimony principle, then at the end of the process, you would be saying this sentence is not unduly harsh. I think that's it in a nutshell. Is there any other questions? I'll reserve my time. Apparently not, Mr. Hawley. Thank you. Mr. Van Devender, is it? Van Devender. Thank you, Your Honor. May it please the court, Cecil Van Devender on behalf of the United States. This case comes before the court with one asserted error, which is that the district court improperly adopted a categorical rule that required it to deny relief for any defendant whose sentence was unaffected by the retroactivity of the Fair Sentence Act. And I would submit that a fair reading of the district court's opinion shows that that is not what the court did here. And the clearest indicator of that comes at the bottom of page 12 and the top of page 13 of the district court's opinion, where it quotes the as-if clause of section 404B and then explains that it, quote, does not take this to mean that it may grant a reduced sentence only if the original sentence certainly would have been lower had the FSA been in effect. And instead, it understands the as-if clause of section 404B to quote, to be something that, quote, informs the exercise of the court's discretion. And it reiterates that same point later on page 18 of the opinion, where after quoting from the Bynum case, it hastens to add, unlike Bynum, this court doesn't understand the as-if clause to be a restriction on my discretion. I understand it to be something that guides how I analyze this case. And as Judge Kethledge pointed out, throughout the rest of the opinion, there are a number of other indicators. The court repeatedly says that, you know, this fact tends to suggest this. It militates against that. So I don't think that there's a strong indication that the district court adopted any sort of categorical rule or misunderstood the scope of its discretion here. Looking at a number of the recent cases that this court has issued, I think there are quite a few that support what the district court did here. And this case is also very distinguishable from others in which this court has reversed. So starting with, I think, some of the ones that are more helpful to wear and to defendants generally, such as Boulding and Marty Smith. Marty Smith, when it reverses and remands, it notes that district courts not only can but should consider the purposes behind the First Step Act and the Fair Sentencing Act when evaluating the 3553A factors. Boulding adopts a broad approach to eligibility adopting a categorical method and explains that one of the rationales behind that is that district courts still have discretion to deny relief completely to avoid unwarranted windfalls. And I think that reference to unwarranted windfalls, which has been discussed in a number of district court opinions, refers to situations like this one where the defendant is technically eligible, but it's very clear that nothing about the crack offense, nothing about the retroactivity of the Fair Sentencing Act had any effect on the original hearing. And then Smithers as well, when the court affirmed and cited with approval the fact that the district court had highlighted the fact that the retroactive application of the Fair Sentencing Act had no impact on the original range. And then if you contrast the case to ones where this court has reversed, this is not a case like Bemis, where the court thought that it lacked the authority to grant a reduction. It's not a case like Allen or the recent decision that Judge McKeague authored in Martin, where the court thought there was some category of evidence that was just categorically off the table. It's not a case like Boulding, where the court failed to fully consider what the current range would be. Again, no dispute that the same range of three states to life applies. It's not a case like Marty Smith, where there's a vast delta between the sentence and the current range. It's not a case like Latham that Judge Ketledge authored, I believe yesterday, where the court simply fails to explain why it did what it did. So you take all that together, I think what we have here is a case where the district court appropriately understood the scope of its discretion. It relied on factually accurate and legally valid considerations, and it did not mistakenly believe that it lacked the authority to act or that it was precluded from considering some category of information. And so when you take all that together, I think this is a case where the district court thoroughly explained its reasons, had a valid basis to exercise its discretion to deny relief, and the court should therefore affirm. Okay, thank you, Counselor. Mr. Hawley? My mic didn't work. There you go. You were muted. Mr. Hawley? There it is. Okay. There you go. Sorry. I'm sorry. All right. Now, I don't really think this case is like the other cases that have been reversed. I think it's unique because the district court did explain over seven pages into one reason for denying relief. Now, that one reason is really clear when the court says, unless Congress enacts a different statute, I'm not going to reduce the sentence as unduly harsh just because the guy didn't have the benefit of a booker. That's what the court is saying, and it makes it clear by saying that kind of thing over and over again. And I think one way where this is palpable is really if another defendant came along, had much different circumstances, but had the same circumstance of having a small amount of crack that didn't affect the guideline range, I think we would all be confident that the judge would cite to his decision and where and say, I'm not giving relief to this kind of case. That is the judge's laying down a rule. And, you know, unfortunately, the judge looked at this before bolding before Alan. You know, Alan corrected an error that was in the judge's mind, which is, you know, we know this from the judge's decision in stone. The judge thought, I'm not supposed to look at it from today. I'm not supposed to have a renewed thorough analysis. Because in stone, this judge said, I'm not considering Mr. Stone's 20 years of perfect performance in prison. So that's not even relevant. I'm not considering it. And so we know that is the mindset of this judge who writes this seven page decision explaining why there is one principle that is going to keep him from giving relief. And that is that this was not the purpose of the act. And the judge draws all of his support from cases where eligibility was denied, because that's the type of rationale that is supporting him. It's the rationale that judges give. We're saying we're actually supporting the view that bolding rejected. We're saying that people shouldn't even be eligible because they're not they're not the kind of people that this act was going to help. So I do think I think a fair reading of his decision is he has made a categorical decision about this type of claim. And he's going to deny it regardless of the detailed factors that one would normally look at under 3553. Why did he talk about this being at the bottom of the current guideline range? He said that. At one point, he says, Your Honor, I believe, because he is. He is saying that. He's saying they are because. I'm sorry, I lost my train of thought. He's talking about. Because it's important to him, isn't that true? I mean, he's not he's not writing a, you know, a dissertation. He's writing a decision. I think he's actually pointing out that when he says this is a case about that, that maybe he says this is a case that it's about a sentence that may be too harsh because he did not get a Booker variance. And he's describing what happened. The judge gave him a bottom of the guideline sentence that supports the judge's view. That's not what I'm not going to. I won't argue further on that point. OK, well, thank you, Mr. Holly. Your time is expired. We certainly appreciate arguments from both of you today and appreciate your cooperation and participating by video, which I think has gone well logistically. So with that, we'll take the case under advisement. And. Kristen, you may call the next case.